UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| JOHNNY DURHAM, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:15 CV 203 DDN |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Acting Commissioner of Social Security denying the application of plaintiff Johnny Durham for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401- 434, 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born in 1962 and was 51 years old at the time of his hearing. (Tr. 55.) He filed his applications alleging a June 1, 1997 onset date, later amended to September 30, 2011. (Tr. 54, 136-151.) In his Disability Report, he alleged disability due to asthma, arthritis in his spine, chronic obstructive pulmonary disease (COPD), sleep apnea, and a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this action. 42 U.S.C. § 405(g).

learning disorder. (Tr. 208.) His applications were denied initially, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 82-86.)

On April 28, 2014, following a hearing, the ALJ issued a decision concluding that plaintiff was not disabled under the Act. (Tr. 35-45.) The Appeals Council denied his request for review. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

During 2011 plaintiff was seen on a monthly basis at the Steele Family Rural Health Clinic (SFRHC) for back pain and other conditions. On August 10, 2011, plaintiff was seen at SFRHC for back pain, which had improved since an injury, and was prescribed Norco, for moderate to severe pain. (Tr. at 475.) On September 6, 2011, plaintiff saw Judith Haggard, a family nurse practitioner (FNP), for acute sinusitis and was prescribed Vicodin and antibiotics. (Tr. at 404-05.) He was seen again at SFRHC on September 14, 2011 for an upper respiratory infection. (Tr. at 471-73.)

Plaintiff was seen at SFRHC on October 10 and 14, 2011, for a cough, asthma, and lower back pain. He was continued on Norco. (Tr. at 469, 473.) He was seen again at SFRHC on December 14, 2011, and diagnosed with osteoarthritis, asthma, and lower back pain. (Tr. at 461.)

On January 1, 2012, plaintiff was seen as a walk-in at the emergency room at Twin Rivers Medical Center for wheezing, chest pain, and congestion. (Tr. at 382-83.) He was diagnosed with chronic asthmatic bronchitis and prescribed an antibiotic, a steroid inhaler, and cough and cold medication. (Tr. at 381.)

In 2012, plaintiff was seen on a monthly basis for back pain, asthma, and degenerative disc disease. He was prescribed Norco. (Tr. at 425-58.) On November 7, 2012, plaintiff saw Burl McKenzie, physician's assistant (PA), for lower back pain after reinjuring his back while helping his brother work on a tractor. He reported pain from the injury for two weeks and had been unable to work. (Tr. at 423.) He was diagnosed with

- 2 -

lumbago, sciatica, chronic airway obstruction, chronic pain syndrome, osteoarthritis, asthma, and COPD. He was prescribed Norco, Medrol, a corticosteroid hormone, and Celebrex. (Tr. at 424-25.) Follow-up two days later indicated that his back pain had improved and he needed a letter to return to work. (Tr. at 599.)

In a function report dated November 10, 2012, plaintiff reported no difficulty performing self-care activities. He described fairly normal daily activities, including preparing meals, watching television, and performing some household chores such as taking out the trash, doing laundry, mowing the lawn with a riding mower, and checking the mail. He could drive alone and left his home several times a day. His hobbies included going for short nature walks, reading magazines, and listening to music. He visited friends or family on a weekly basis. (Tr. 221-28.)

On November 19, 2012, plaintiff saw Nurse Practitioner Amanda Smallmon for muscle cramps in the left side of his lower back. He received an injection of Ketorolac Tromethamine, for short-term treatment of moderate to severe pain, and was prescribed Ultram, a narcotic-like pain reliever, and ibuprofen. He was instructed to avoid straining and heavy lifting for the next two weeks. (Tr. at 642-43.) On November 21, 2012, plaintiff reported his back pain continued. Ms. Smallmon discussed the possibility of the need for an MRI to evaluate the bulging disc in his back and which plaintiff said he could not afford. (Tr. at 640.)

On December 7, 2012, plaintiff saw PA McKenzie and was diagnosed with chronic airway obstruction, chronic pain syndrome, and asthma. He was prescribed Norco and instructed to return in one month. (Tr. at 597-98.)

On January 7, 2012, plaintiff saw PA McKenzie for chronic back pain and asthma. He was seen on February 7, 2013, for back pain, lumbago, chronic pain syndrome, and osteoarthritis. He was treated for an ear infection on March 7, 2013. Plaintiff continued on Norco. (Tr. at 585, 589, 593.)

On April 9, 2013, plaintiff saw Timothy W. McPherson, D.O. Plaintiff described his pain as severe enough to cause him to walk with a limp and to cause "difficulty with

his activities of daily living." Dr. McPherson observed that plaintiff had a very limited range of motion in the lumbar spine, difficulty standing from a chair and sitting on a table, with walking, and that he walked with an obvious limp. He was unable to bend and touch his toes or do calf raises. (Tr. at 579-81.)

On April 9, 2013, Dr. McPherson completed a Medical Source Statement – Physical form, stating that plaintiff was not capable of performing sustained work in several categories on a regular and continuing basis. Dr. McPherson opined that plaintiff could lift and/or carry frequently less than 5 pounds, lift and/or carry occasionally 10 pounds; stand and/or walk continuously for less than 1 hour, stand and/or walk throughout an 8 hour day for less than 1 hour; sit continuously without a break for 30 minutes, sit throughout an 8 hour work day for 2 hours; push and/or pull for an unlimited time. Dr. McPherson believed that plaintiff could never climb, balance, stoop, or crouch, and that he could occasionally kneel or crawl. He opined that plaintiff was capable of frequently reaching, handling, fingering, feeling, seeing, speaking, and hearing. He should avoid any exposure to extreme cold, dust/fumes, hazards, and heights, avoid moderate exposure to extreme heat and wetness/humidity, and avoid concentrated exposure to weather and vibration. Dr. McPherson believed that if plaintiff has pain, he should lie down for thirty minutes at a time three times during an 8-hour work day to alleviate symptoms. Finally, Dr. McPherson believed that plaintiff's use of medication "did not cause a decrease in concentration, persistence, or pace, or any other limitations." (Tr. at 522-23.)

On April 24, 2013, Jennifer Lawrence, FNP, diagnosed plaintiff with asthma and an adjustment disorder with mixed emotional features. Plaintiff felt depressed and anxious due to stress. He could not find a job, had been denied disability, and financial concerns were "getting the best of him." (Tr. at 634.) He was prescribed a steroid inhaler and referred to a psychiatrist for consultation. (Tr. at 634-36.)

Plaintiff saw Dr. McPherson in May and June 2013 for chronic pain, low back pain, and difficulty swallowing. Dr. McPherson assessed thyroid enlargement, an

increased risk of diabetes, and a high probability of obstructive sleep apnea. (Tr. at 569-78.)

On August 22, 2013, plaintiff underwent an initial psychiatric evaluation with Erica Smith, M.D., a psychiatrist. He had lost his job at Wal-Mart seven months earlier and thought his chronic back pain and asthma had played a role. He reported depressed mood, decreased energy level, and change in appetite. His anxiety level was somewhat higher than it is normally. He was taking Paxil, an antidepressant, prescribed by Ms. Lawrence, but did not really have a response to it and wanted to try a similar medication to help with mood and anxiety. (Tr. at 622.)

Plaintiff's mental examination showed he was not in any acute distress. He had good concentration, focus, and attention. He reported his mood was "okay." Dr. Smith noted his history of chronic back pain and asthma. She diagnosed depression, not otherwise specified, and chronic back pain and asthma. Dr. Smith prescribed Zoloft, an antidepressant, and instructed plaintiff to return in six weeks. (Tr. at 624.)

Plaintiff saw Dr. Smith again on October 1, 2013. He had stopped taking Zoloft because it caused diarrhea and did not help his mood. He continued to experience depressive symptoms, including decreased energy and appetite, and depressed moods. Dr. Smith discontinued the Zoloft and prescribed Viibryd, another antidepressant. (Tr. at 619-20.)

Plaintiff saw Dr. Smith again on October 3, 2013. He had stopped taking Viibryd because it caused dizziness, and they discussed trying Lexapro instead. His symptoms were the same. Dr. Smith discontinued Viibryd and started him on Lexapro. (Tr. at 616-17.)

Plaintiff saw Dr. Smith again on October 28, 2013 and asked him to increase his Lexapro, which had helped, but was not as effective now. Dr. Smith increased his Lexapro dose from 10 to 20 mg. (Tr. at 613-15.) On December 4, 2013, plaintiff reported to Dr. Smith that he was "still kind of down" and did not have enough energy. Dr. Smith continued Lexapro and started Wellbutrin. (Tr. at 612.)

Plaintiff saw Dr. Smith on January 6, 2014, reporting that the Wellbutrin had "helped some" but its effectiveness had decreased over time. He still had depressed moods a few days per week. Dr. Smith increased his Wellbutrin and continued him on Lexapro. (Tr. at 607-09.) On February 3, 2014, plaintiff reported he still had some days of depressed moods and irritability. Dr. Smith continued his Wellbutrin and Lexapro and started him on Abilify, an antipsychotic. (Tr. 604.)

In July 2013, plaintiff saw FNP Lawrence for follow-up on his asthma and was continued on his medications. (Tr. at 631-33.) Plaintiff saw Dr. McPherson in August and September 2013 for chronic pain in his hip and knee. (Tr. at 555-60.)

Plaintiff saw Dr. McPherson on November 19, 2013, describing back pain radiating to his legs. He said that the pain was sharp, that he had suffered from pain for years, and that it was interfering with his sleep. His pain was 7 on a 10-point scale. Dr. McPherson diagnosed chronic pain syndrome, disc degeneration, asthma, and osteoarthritis. (Tr. at 547-48.) He saw Dr. McPherson again on December 17, 2013. (Tr. at 542.)

On February 5, 2014, plaintiff injured his lower back falling on ice. He saw Physician's Assistant Allison Jowers. Plaintiff described worsening difficulty with swallowing and severe and worsening pain in his shoulder and lower back. He was diagnosed with (1) dysphagia or difficulty swallowing; (2) achalasia, a disease of the esophagus that prevents relaxation of the lower esophagus; and (3) hypothyroidism or underactive thyroid. (Tr. at 529-32.)

In follow-up with Dr. McPherson on February 18, plaintiff reported severe and worsening pain in his shoulder and lower back. Dr. McPherson diagnosed chronic pain syndrome and degeneration of lumbosacral intervertebral disc. (Tr. at 526-27.) On April 9, 2014, he underwent a procedure to examine the lining of his esophagus and stomach that indicated that plaintiff had esophageal stricture and a hiatal hernia. He was instructed to increase Prilosec, a heartburn medication. (Tr. at 644.)

On July 8, 2015, an MRI of plaintiff's lumbar spine revealed modest degenerative disc disease at multiple levels, modest loss of disc height at some levels, mild narrowing of the central canal, and mild foraminal stenosis or narrowing. (Tr. at 12-13.)

**ALJ Hearing**

On April 22, 2014, plaintiff appeared and testified to the following at a video hearing before an ALJ. (Tr. 51-67.) He completed the twelfth grade. He lives in a house with his wife. He last worked in January 2013 as a custodian at Walmart. He is no longer able to work due to his lower back problems, specifically, bulging discs in his lower back, which have worsened a bit over the years. His pain worsens if he does a lot of walking or stands in one place at a time. He can walk 50 feet and stand for about one half hour before needing to take a break. Hydrocodone provides pain management. He needs to lie down on his side for half an hour, three to four times per day. (Tr. 55-59.)

He has been diagnosed with COPD. He uses a cane for pain on his right side, although it was not prescribed by his doctor. He has also been diagnosed with depression and takes Wellbutrin which helps some. He has three to four bad days per week. He can do "very little" in the way of chores around the house because it hurts his lower back. He is able to mow the lawn with a riding mower. His wife does the grocery shopping and he sometimes helps bring the groceries in. His doctor has instructed him to not lift anything more than 25 pounds. He does not get out much socially but goes to church sometimes and visits his relatives. (Tr. 59-64.)

Vocational Expert (VE) Janice Hastert testified to a hypothetical individual who was the same age and educational background as plaintiff. The individual retained the capacity to occasionally lift 20 pounds and frequently lift 10 pounds. The individual could walk or stand 6 hours in an 8-hour day and sit for 6 hours in an 8-hour day. The individual could occasionally climb and stoop, should avoid prolonged exposure to chemicals, dust, fumes, and noxious odors, and would be limited to jobs that do not

demand attention to detail or complicated job task instructions. The VE testified that the hypothetical individual could not perform plaintiff's past relevant work but could perform other work that exists in the national economy, including injection mold machine tender, bench assembler, and dessert cup machine feeder. The VE testified that if the individual was limited to jobs that would allow him to lie down for thirty minutes at a time three to four times per week, no competitive jobs would be available. (Tr. 64-66.)

### III.   DECISION OF THE ALJ

On April 28, 2014, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 35-45.) The ALJ found, among other things, that plaintiff had severe impairments: "disorder of the back and depression." (Tr. 37.) However, the ALJ found that he did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. (Tr. 38.)

The ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform light work as defined by the Commissioner's regulations. More specifically, he found that plaintiff had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; walk or stand for 6 hours during an 8-hour workday; and sit for 6 hours during an 8-hour workday. (Tr. 40.) Plaintiff could occasionally climb and stoop; needed to avoid prolonged exposure to chemicals, dusts, fumes, and noxious odors; and, secondary to reported chronic pain and affective/mood disorder, was limited to jobs that do not demand attention to details or complicated job tasks or instructions. (Tr. 40.)

Based on this RFC, the ALJ concluded that plaintiff was unable to perform his past relevant work. The ALJ found that plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including work as an injection mold machine tender, bench assembler, and dessert cup machine feeder. Consequently, the ALJ found that plaintiff was not disabled under the Act. (Tr. 44-45).

The ALJ gave "minimal" weight to the medical source statement completed by treating source Dr. McPherson because it was not supported by the weight of the medical evidence. (Tr. 42-43.)

## V. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the

Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW).  Id. § 416.920(a)(4)(iv).  The claimant bears the burden of demonstrating he is no longer able to return to his PRW.  Pate-Fires, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  Id.; 20 C.F.R. § 416.920(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues the ALJ erred in failing to give substantial weight to Dr. McPherson's opinions and in determining his residual functional capacity.  This court disagrees.

**Treating Physician Timothy W. McPherson, D.O.**

In his medical source statement dated April 9, 2013, Dr. McPherson checked boxes that indicated plaintiff could lift and/or carry less than 5 pounds frequently and 10 pounds occasionally, stand and/or walk for 15 minutes continuously and less than 1 hour total during an 8-hour workday, and sit continuously for 30 minutes and for a total of 2 hours over the course of an 8-hour workday.  He indicated plaintiff could never climb, balance, stoop, or crouch and only occasionally kneel and crawl.  Plaintiff must avoid any exposure to extreme cold, dust/fumes, hazards, and heights; moderate exposure to extreme heat and wetness/humidity; and concentrated exposure to weather and vibration.  Dr. McPherson also indicated plaintiff needed to lie down for 30 minutes three times over the course of a workday. (Tr. 522-23.)

The opinion of a treating physician is controlling if it is well supported by medically acceptable diagnostic techniques and is not inconsistent with the other

substantial evidence. Prosch v. Astrue, 201 F.3d 1010, 1012-13 (8th Cir. 2012) (mirroring language of 20 C.F.R. §§ 404.1527 and 416.927). The treating source's opinion is not inherently entitled to controlling weight, however. Blackburn v. Colvin, 761 F.3d 853, 860 (8th Cir. 2000). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). However, a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. See Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007).

In assessing a medical opinion, an ALJ may consider factors including the length of the treatment relationship and the frequency of examination, the nature and extent of treatment relationship, supportability with relevant medical evidence, consistency between the opinion and the record as a whole, the physician's status as a specialist, and any other relevant factors brought to the attention of the ALJ. See 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6); Owens v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008) (holding that when a treating physician's opinion is not entitled to controlling weight, the ALJ must consider several factors when assessing the weight to give it). Although an ALJ is not required to discuss all the factors in determining what weight to give a physician's opinion, the ALJ must explain the weight given the opinion and give "good reasons" for doing so. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ gave good reasons here. The ALJ first noted that Dr. McPherson's medical source statement was inconsistent with the medical evidence as a whole. (Tr. 43.) More than twenty examinations throughout the relevant period demonstrated essentially normal medical findings relating to plaintiff's spine and extremities, including normal muscle/motor strength, intact sensory function, normal reflexes, and a normal gait. (Tr. 399, 402, 432, 444, 448, 453, 457, 465, 469, 473, 548, 552, 563, 571, 585, 597, 601, 604, 607, 610, 613, 616, 619, 629, 632, 635, 641, 643.) The examinations that revealed positive findings were largely subjective in nature, with plaintiff reporting only tenderness to palpation or limited range of motion secondary to pain. (Tr. 428, 440, 461, 527, 531,

535-36, 540, 544, 567, 581, 593.)  On those occasions, his motor strength and sensation were intact and straight leg raising was generally negative.  (Tr. 428, 440, 461, 527, 531, 535-36, 540, 544, 581, 593.)  The normal to mild findings are inconsistent with Dr. McPherson's opinion suggesting that plaintiff could not perform even sedentary activity and would have to spend a substantial portion of the day lying down.  (Tr. 43.)  See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.")

Dr. McPherson's Medical Source Statement was also inconsistent with plaintiff's admitted daily activities.  (Tr. 43.)  Dr. McPherson indicated that plaintiff could never lift more than 10 pounds and could frequently lift less than 5 pounds.  The ALJ, however, noted that plaintiff was working 30 hours a week during the relevant period and told the agency that his work involved frequently lifting 25 pounds and occasionally lifting up to 50 pounds.  (Tr. 43, 233, 522.)  The job also required standing six hours a day, while Dr. McPherson indicated plaintiff could only stand for less than an hour over the course of a workday.  (Tr. 233, 522.)  See Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (ALJ may discredit a doctor's opinion where the doctor states that plaintiff has more physical limitations than he actually exhibits in his daily living).

The ALJ also noted that the only medical record documenting significant functional restrictions was dated April 9, 2013, the same day plaintiff saw Dr. McPherson to complete paperwork in support of his claim for disability.  (Tr. 43, 579-82.)  During that exam, Dr. McPherson indicated that plaintiff had difficulty performing daily activities.  (Tr. 579.)  However, subsequent notes from Dr. McPherson and others indicate that plaintiff's performance of daily activities was normal.  (Tr. 555, 558, 574, 577.)  At the April 9 exam, Dr. McPherson also indicated plaintiff had difficulty standing from a chair and walked with an "obvious" limp.  (Tr. 581.)  Those findings are contradicted by observations of a normal gait during his other appointments.  (Tr. 424, 428, 432, 436, 440, 444, 448, 453,457, 465, 469, 473, 527, 531, 548, 552, 563, 567, 571, 585, 589, 593, 597, 601,604, 607, 610, 613, 616, 619.)

The ALJ further noted that Dr. McPherson's opinion was provided on a checklist form and did not include an explanation or basis of support for the limitations described therein. (Tr. 43.)  See Cline v. Colvin, 771 F.3d 1098, 1103-04 (8th Cir. 2014) (while a checklist evaluation can be a source of objective medical evidence, the ALJ may discount the opinion where the limitations listed on the form stand alone, and were never mentioned in the physician's treatment records or supported by any objective testing or reasoning).  For all of these reasons, the ALJ properly afforded little weight to Dr. McPherson's medical source statement.  Therefore,  the ALJ's use of Dr. McPherson's opinion was supported by substantial evidence in the record.

**Residual Functional Capacity (RFC)**

Plaintiff next argues that even if the ALJ properly weighed Dr. McPherson's opinion, he failed to provide medical evidence to support his RFC finding.  This court disagrees.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record.  Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000).  RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations.  Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945(a).  While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional.  Lauer, 245 F.3d at 704.  An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7 (1996).

In this case, the ALJ determined that plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; walk or stand for 6 hours during an 8-hour workday; and sit for 6 hours during an 8-hour workday. (Tr. 40.) Plaintiff could occasionally climb and stoop; needed to avoid prolonged exposure to chemicals, dusts, fumes, and noxious odors; and, based on his reported chronic pain and affective/mood disorder, was limited to jobs that do not demand attention to details or complicated job tasks or instructions. (Tr. 40.)

Plaintiff argues the ALJ erred in giving little weight to Dr. McPherson's opinion, the only opinion of record addressing physical limitations. He argues the ALJ summarized the evidence, discounted plaintiff's statements, and arbitrarily concluded that plaintiff had the ability to perform a limited range of light work. He argues that the ALJ's RFC assessment was flawed because without Dr. McPherson's opinion and plaintiff's statements, there is no record evidence to explain how his physical impairments impacted his ability to function in a work setting. He argues that the ALJ's finding that back pain and use of narcotic medication would "reasonably limit him to light work" is insufficient as a medical basis to support the RFC. The Commissioner contends that specific medical opinion evidence is not required to support an RFC determination.

The Eighth Circuit has considered whether the "some medical evidence" that is required to support an RFC finding must include a medical opinion that specifically addresses the claimant's work-related limitations. See Flynn v. Astrue, 513 F.3d 788, 793 (8th Cir. 2008) (rejecting argument that ALJ improperly concluded "on her own" that the claimant could lift 20 pounds occasionally and 10 pounds frequently because the record did not include supporting medical opinion; instead finding physicians' observations that claimant had normal muscle strength and mobility constituted "substantial medical evidence" supporting the RFC finding). Although an RFC must be based upon "some medical evidence," there is no requirement that the RFC align with, or be based upon, a specific medical opinion of record. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (observing that ALJ is not required to rely entirely on a particular physician's

opinion or choose between the opinions of any of the claimant's physicians); Halverson v. Astrue, 600 F.3d 922, 933–34 (8th Cir. 2010) (holding that medical opinion evidence was not necessary to support the RFC where the ALJ considered the medical records, the claimant's statements, and other evidence in making the RFC determination); Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (even though RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner). The ALJ is required to rely upon medical evidence, but not medical opinion evidence. See Martise, 641 F.3d at 927.

The ALJ in this case properly relied on "some medical evidence" to support his RFC finding. The ALJ considered the record evidence as a whole, which as discussed above, revealed very few positive findings. (Tr. at 41.) Despite his allegations of disabling back pain, plaintiff's motor and sensory functioning was consistently intact. (Tr. 41, 399, 402, 432, 444, 448, 453, 457, 465, 469, 473, 548, 552, 563, 571, 585, 597, 601, 604, 607, 610, 613, 616, 619, 629, 632, 635, 641, 643.) In addition, despite his allegations of difficulty walking, the record evidence documented a normal gait. (Tr. 424, 428, 432, 436, 440, 444, 448, 453,457, 465, 469, 473, 527, 531, 548, 552, 563, 567, 571, 585, 589, 593, 597, 601,604, 607, 610, 613, 616, 619.) Straight leg raising, used to determine whether a patient has a herniated disk, was also negative on all but two occasions, indicating that plaintiff did not have long-term radiculopathy or nerve root symptoms. (Tr. 41, 424, 428, 461, 581, 589, 593, 601.) Despite frequent treatment, there was no record evidence of objective studies such as x-rays showing any evidence of severe degenerative changes. The ALJ lawfully noted that the record evidence did not document that plaintiff's impairments resulted in any persistent motor, sensory, reflex, or strength deficits. (Tr. 41.) The ALJ nevertheless considered plaintiff's complaints of pain and use of pain medication and limited his RFC to a restricted range of light exertional activity. (Tr. 40-41.)

The ALJ also properly considered plaintiff's subjective reports in determining his RFC in accordance with Social Security Ruling (SSR) 96-8p and 20 C.F.R. §§ 404.1529

and 416.929. (Tr. 41-42.) The ALJ noted that there were a number of inconsistencies between plaintiff's alleged limitations and the record evidence. The ALJ noted that plaintiff alleged disability beginning on September 30, 2011. However, there was no record evidence indicating a new impairment or worsening of any preexisting condition at that time. See Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole). On September 14, 2011, shortly before his alleged onset date, plaintiff was seen for a cough and congestion and medication management. (Tr. 471.) At his next appointment on October 14, 2011, two weeks after his alleged onset date, plaintiff again sought treatment for a runny nose and skin peeling on his right thumb, not for disabling back pain. (Tr. 467.) Additionally, plaintiff initially alleged a June 1, 1997 onset date even though he was employed for many years thereafter. (Tr. 35.) The ALJ properly discounted plaintiff's subjective reports based on inherent inconsistencies in the record. See Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) (an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances).

The ALJ also noted that despite plaintiff's reports of disabling back pain since his alleged onset date, plaintiff worked as a janitor 25 to 30 hours per week from February 2012 to January 2013, and while performing this work, plaintiff reported lifting up to 50 pounds and frequently lifting 25 pounds, activity that exceeded Dr. McPherson's medical source statement and the ALJ's RFC determination. (Tr. 42, 56, 232-33, 254.) See Medhaug v. Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (working generally demonstrates an ability to perform substantial gainful activity). Therefore, plaintiff's part-time work during the relevant period weighs against his claim of disability. Moreover, his level of activity while working was also inconsistent with his subjective reports and supported the ALJ's determination that he retained the ability to perform light work. These inconsistencies suggested his symptoms were not as limiting as he alleged.

The ALJ also noted that plaintiff's appearance and demeanor were inconsistent with his reported limitations. (Tr. 43.) Despite his reported inability to focus for more

than one minute, the ALJ did not observe that plaintiff had attention difficulties at his administrative hearing. (Tr. 42.) Plaintiff also used a cane at the hearing even though it was not prescribed by a medical provider and plaintiff was regularly reported as not needing an assistive device. (Tr. 42, 59-60, 506, 523, 563, 585, 597, 601.) Cf. Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (ALJ's personal observations of claimant's demeanor at administrative hearing is proper in making credibility determinations).

Finally, the ALJ noted that plaintiff's daily activities were inconsistent with his subjective reports. (Tr. 42.) In a function report dated November 10, 2012, plaintiff reported no difficulty performing self-care activities. He described fairly normal daily activities, including preparing meals, watching television, and performing some household chores such as taking out the trash, doing laundry, mowing the lawn with a riding mower, and checking the mail. He could drive alone and left his home several times a day. His hobbies included going for short nature walks, reading magazines, and listening to music. He visited friends or family on a weekly basis. (Tr. 221-28.) While a claimant's ability to engage in personal activities such as chores and hobbies do not preclude a find of disability, the extent of plaintiff's daily activities in this case and the corresponding medical evidence, was properly considered by the ALJ in discrediting the opinion of plaintiff's treating physician. See Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015)

Plaintiff argues this case is similar to Gordon v. Astrue, 801 F. Supp.2d 846 (E.D. Mo. 2011). However, in Gordon the ALJ failed to either credit two medical opinions or offer grounds for discounting the opinions. See id. at 859-60. This case is distinguishable because the ALJ here clearly set forth his reasons, supported by the record, for discounting Dr. McPherson's medical source statement. (Tr. 42-43.) In Gordon the ALJ also failed to evaluate the claimant's subjective complaints. Id. at 862. Again, the ALJ here delineated his reasons for discounting plaintiff's subjective reports. (Tr. 41-42.)

This court concludes the ALJ lawfully determined plaintiff retained the RFC to perform a limited range of light work. The ALJ's RFC determination was supported by

substantial evidence despite the fact that it did not rely upon any medical opinion evidence.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.


                                            S/ David D. Noce
                                     **UNITED STATES MAGISTRATE JUDGE**

Signed on March 7, 2017.